Rel: April 28, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2022-2023

_____

### 2210161

_____

## Jacob Shook

### v.

## Erica Shook

_____

### 2210206

_____

## Erica Shook

### v.

## Jacob Shook

## Appeals from Madison Circuit Court
## (DR-17-900171.01)

HANSON, Judge.

Jacob Shook ("the father") appeals from a judgment of the Madison Circuit Court ("the trial court") that modified his child-support obligation and held him in contempt of court. Erica Shook ("the mother") cross-appeals from that same judgment, which denied her request to modify custody of O.L.S. ("the child").

Procedural History

The parties were divorced by a judgment entered by the trial court in March 2018. The divorce judgment reads, in pertinent part:

"1. The bonds of matrimony heretofore existing between the plaintiff and the defendant be and the same are hereby dissolved and [the mother] is forever divorced from [the father]….

"2. The Settlement Agreement duly executed by the parties and filed with the Clerk of this Court on March 22, 2018, is hereby ratified and approved by the Court, and is incorporated into and made a part hereof as though fully set out herein. It is ORDERED by the Court that the parties keep and obey the terms thereof, subject to penalty as for contempt.

"….

"4. Neither party shall be required to pay child support to the other party based on their exercise of joint physical custody of the minor child. Based upon the income and expenditures supplied by the parties in forms CS-41, [Child Support Obligation Income Statement/Affidavit] and having

2

considered the agreement of the parties, the Child Support Guidelines as established by Rule 32 of the Alabama Rules of Judicial Administration have not been followed and applied due to the joint physical custody arrangement for the child. The Court finds this to be fair and reasonable and said deviation is hereby ratified and approved by this Court."

The parties' above-quoted "Settlement Agreement," which was

incorporated into the divorce judgment states, in pertinent part:

"7. The parties agree that they will share true joint legal and true joint physical custody and control of the parties' minor child, [O.L.S.]…The parties understand and agree that all decisions related to education, religious upbringing, non-emergency medical and dental treatment, and extracurricular activities of the minor [child] should be made jointly. However, in the event that the parties are unable to reach an agreement regarding the education, medical/dental, religious, and extracurricular needs of the minor [child], the parties have agreed to divide decision making authority as follows:

"Medical/Dental  Mother/Plaintiff
"Education        Father/Defendant
"Religious        Mother/Plaintiff
"Extracurricular  Father/Defendant
"Civic            Mother/Plaintiff
"Cultural         Father/Defendant

"Both parties understand and agree that the ability to exercise this decision-making authority does not negate the responsibility of the parties to communicate with one another and attempt to reach a joint agreement regarding these issues.

"8. The parties have agreed with respect to the minor child's school that the minor shall attend school at Brookhill

3

Elementary school, which is or will be located in the Mother's school district from pre-school/Kindergarten through Grade four (4). The parties have agreed that beginning with the minor child's commencement the fifth (5th) grade school year that the minor child shall attend school in the father's school district, provided that the father still resides in the school district he is currently residing in at the time of this agreement.

"9. The parties shall exercise custodial periods with the minor child as they can agree. However, if the parties cannot agree, the parties agree that they shall utilize the following schedule with respect to weekday/weekend custodial periods with their minor child:

"The parties shall exercise rotating periods of custody with the Mother/Plaintiff having Custody of the minor child from Wednesday at 8:00 a.m. until Friday at 8:00 a.m. every week. The Father/Defendant shall have custody of the minor child from Monday at 8:00 a.m. until Wednesday at 8:00 a.m. every week. The party whose custodial period is beginning shall be responsible for picking up the minor child from the other party or from school if school is in session at the start of their custodial period. The parties agree that they shall alternate weekends from Friday at 8:00 a.m. until Monday at 8:00 a.m. each week. The parties agree that they shall begin utilizing this schedule for the first weekend of April 2018 (April 6th-8th, 2018) and the first weekend shall be afforded to the Father/Defendant.

"The parties agree that they will utilize the following schedule for the purposes of Holidays and Special Occasions, which shall take precedence and supersede the above weekday/weekend custodial schedule:

"a. Parents are allowed to vary from the Court-ordered custody schedule by mutual agreement…However, if parents are not both in

4

agreement, the following custody schedule is to be followed. Failure to do so can subject a party to sanctions for contempt of Court.

"b. Unless as otherwise set out herein, all visitation will be accomplished by the mother picking up the child at the residence of the father or school if visitation begins at the end of the school day, or such other reasonable place as the parties may mutually agree at the times provided for each period of visitation.

"….

"10. The parties have agreed that in consideration of their joint custodial agreement that neither party shall have a Child Support obligation to the other….

"The parties agree that the Father/Defendant shall be responsible for the payment of all expenses related to extracurricular and uncovered medical/dental for the minor child each year up the sum of THREE THOUSAND AND 00/100 ($3,000.00) DOLLARS, per calendar year. In the event that the extracurricular and uncovered medical/dental expenses for the minor child exceed THREE THOUSAND AND 00/100 ($3,000.00) DOLLARS, per calendar year, the parties agree that they shall evenly divide (50%-50%) all extracurricular and uncovered medical/dental expenses for the minor child in excess of this THREE THOUSAND AND 00/100 ($3,000.00) DOLLARS, per calendar year. The parties further agree that they shall each pay and be responsible for one-half (1/2) of any and all school, related expenses for the parties' minor child, which include but are not limited to expense which are required by the school, or relate to field trips or other non-athletic/extracurricular school related functions for the minor child (e.g. book fairs).

"a. The party who incurs the expense shall present to the other party bills and/or receipts for payment or reimbursement within fifteen (15) days from the receipt of it. The party who did not incur the expense shall pay or reimburse the party who incurred the expense for his/her share of said expenses within fifteen (15) days from the receipt of it.

"11. The parties agree to provide for their minor [child] in accordance with the 'Standard Parenting Clauses' attached hereto as Exhibit 'A'.

"12. The minor child is covered on the Defendant's private health insurance. The parties agree that the Plaintiff shall continue to cover the minor child on his health insurance. The Defendant shall provide the Plaintiff with a copy of the policy, schedules of benefits, identification cards and claim forms to assist in the prompt payment of covered charges by the insurance company.

"b. The parties agree that that the Father/Defendant in conjunction with his agreement as stated in Paragraph 10, hereinabove, to be responsible for the payment of extracurricular expenses for the parties' minor child, shall be responsible for the payment of any and all uninsured/uncovered medical, dental, pharmaceutical, orthodontic, ophthalmic and optometric expenses and any reasonable and necessary, therapeutic or rehabilitative expenses incurred for the benefit of the minor child up to the sum of THREE THOUSAND AND 00/100 ($3,000.00) DOLLARS annually and per calendar year. In the event that the amount of uninsured/uncovered medical, dental, pharmaceutical, orthodontic, ophthalmic and optometric expenses and any reasonable and

6

necessary, therapeutic or rehabilitative expenses incurred for the benefit of the minor child and the extracurricular expense for the minor child once the expenses are in excess of this THREE THOUSAND AND 00/100 ($3,000.00) DOLLARS annual amount to be paid by the [mother].

"c. The party who incurs the expense shall present to the other party bills and/or receipts for payment or reimbursement of uninsured medical and/or dental bills within fifteen (15) days from the receipt of it. The party who did not incur the expense shall pay or reimburse the party who incurred the expense for his/her share of said expenses within fifteen (15) days from the receipt of it. In the event that either party shall receive reimbursement for payment directly from the health insurance carrier, that party shall pay the other party (50%) of that reimbursement within ten (10) days.

"....

"30. The parties hereto are ordered and directed as follows:

"(a) That each shall remain from any and all words, conduct, deeds, or activity which are intended or calculated to interfere with, abuse, embarrass or intimidate the other;

"(b) That each will respect the privacy of the other from and after the date hereof; and

"(c) That each will refrain from any activity, words, or deeds intended or calculated to interfere with the employment of the other, or

> calculated or intended to interfere with the family or social life of the other."

(Capitalization in original.)

The above-referenced "Standard Parenting Clauses," which were also incorporated into the parties' divorce judgment, read, in pertinent part:

> "(1) For so long as the children reside in Madison County, Alabama, all visitation will be accomplished by the non-custodial parent picking up and redelivering the minor children to the residence of the custodial parent, or such other reasonable place as that parent may indicate, at the times provided for each period of visitation.
>
> "(2) Both parties shall have reasonable telephone access to the minor children while they are in the physical control of the other parent. The minor children shall also have reasonable telephone access to both parties at reasonable times."

On June 22, 2020, the mother filed a verified petition seeking to modify custody of the child and to hold the father in contempt of court. In her petition, the mother asserted that the father had failed to comply with various provisions that had been incorporated into the parties' divorce judgment and that there had been a material change in circumstances, making it in the best interest of the child for her to have

sole physical custody of the child. The father thereafter filed his response to the mother's petition, denying the mother's allegations.

Shortly thereafter, the father sought and received permission from the trial court to file a counterclaim against the mother. In his counterclaim, the father requested, among other things, that the mother be held in contempt of court and that the parties be equally responsible for the child's extracurricular-activity expenses. After a trial, the trial court entered its final judgment, which states, in pertinent part:

"1. The parties shall continue to exercise joint legal custody of their minor child, [O.L.S.], whose date of birth is November 17, 2015. The mother has proven to the Court's satisfaction that material changes affecting the child's welfare since the entry of the original order warrant a change in custody to promote the best interests of the child. As such, the mother is hereby awarded primary physical custody of the parties' minor child.

"2. In the event the mother and the father are unable to agree on any aspect of the academic, religious, civic, cultural, athletic or medical and dental activities of the child, the mother is designated as having the primary authority and responsibility regarding involvement of the minor child in said activity. As such, Paragraph No. 8 of the [Settlement Agreement] entered into by the parties and ratified and adopted by the Final Decree of Divorce dated March 23, 2018,… is hereby vacated.

"The designation of a parent to possess primary authority and responsibility regarding the involvement of the minor child in certain activities is not intended by this Court to negate the responsibility of the parties to notify and communicate with each other in the exercise of joint legal custody of their minor child.

"3. Paragraph No. 9 of the [Settlement Agreement] entered into by the parties and ratified and adopted by the Final Decree of Divorce dated March 23, 2018,... is hereby <u>vacated</u>. As such, commencing on April 7, 2021, the father shall exercise visitation with the parties' minor child as follows:

> "A. Every Wednesday from 3:00 p.m. until 8:00 a.m. on Thursday morning. Transportation for this period of visitation shall be as agreed upon by the parties. In the event the parties are unable to agree, the father shall pick up the minor child on Wednesday afternoon and shall return the minor child on Thursday morning.

> "B. Every other Wednesday from 3:00 p.m. until 6:00 p.m. on the Sunday following, beginning on Wednesday, April 14, 2021. Transportation for this period of visitation shall be as agreed upon by the parties. In the event the parties are unable to agree, the father shall pick up the minor child on Wednesday afternoon, and the mother shall pick up the minor child on Sunday evening.

"Further, the parties shall exercise holiday and special occasion periods of visitation with the child. …

"….

"5. The father shall pay to the mother the sum of $985.00 per month for the support and maintenance of the

parties' minor child … As such, Paragraph No. 10 of the [Settlement Agreement] entered into by the parties and ratified and adopted by the Final Decree of Divorce dated March 23, 2018,… is hereby <u>vacated</u>.

"Based upon the income and expenditures supplied by the parties in forms CS-41, [Child Support Obligation Income Statement/Affidavit] the Child Support Guidelines as established by Rule 32 of the Alabama Rules of Judicial Administration have not been followed and applied based on the custody schedule, the parties' respective incomes and the needs of the minor child. The Court finds this to be fair and reasonable and said deviation is hereby ratified and approved by this Court.

"….

"6. The mother shall be responsible for and shall pay 30% and the father shall be responsible and shall pay 70% of all extracurricular, athletic, and school related expenses incurred on behalf of the minor child of the parties.

"In the event either party advances extracurricular, athletic and/or school related expenses as described hereinabove on behalf of the minor child, then the party advancing such costs shall be entitled to reimbursement for the party's contribution. …

"….

"8. The evidence presented proves that the father unilaterally changed the location for pick up of the minor child on more than one occasion in violation of Paragraph No. 9(b) of the [Settlement Agreement] entered into by the parties and ratified and adopted by the Final Decree of Divorce dated March 23, 2018. Given the mother's request for a finding of only one (1) act, the Court finds the father guilty of one (1) act of contempt of court for his willful

11

violation of the Order of this Court, and that as punishment the father is sentenced to five (5) days in the Huntsville-Madison County Metro Jail. Said sentence is hereby suspended, and the father is placed on unsupervised probation for a period of two (2) years.

"9. The evidence presented proves that the father failed to provide the mother with a copy of the health insurance policy and schedule benefits. …

"10. The evidence presented proves that the father sent harassing communications to the mother on several occasions in violation of Paragraph No. 30 of the [Settlement Agreement] entered into by the parties and ratified and adopted by the Final Decree of Divorce dated March 23, 2018. The Court finds the father guilty of one (1) act of contempt of court for his willful violation of the Order of this Court, and that as a punishment the father is sentenced to five (5) days in the Huntsville-Madison County Metro Jail. Said sentence is hereby suspended, and the father is placed on unsupervised probation for a period of two (2) years.

"11. The evidence presented proves that the father failed to provide the mother with reasonable telephone access to the minor child during March 2019 in violation of Paragraph No. (2) of the Standard Parenting Clauses incorporated into and made a part of the Final Decree of Divorce dated March 23, 2018. The Court finds the father guilty of one (1) act of contempt of court for his willful violation of the Order of this Court, and that as a punishment the father is sentenced to five (5) days in the Huntsville-Madison County Metro Jail. Said sentence is hereby suspended, and the father is placed on unsupervised probation for a period of two (2) years.

"12. The evidence presented proves that the father failed to notify the mother of the minor child's medical appointment. …"

The final judgment also included what the court referred to as "Parenting Clauses," which, among other things, addressed reasonable telephone access to the child, alienation of the child, conflict between the parents, extracurricular activities, visitation, medical/dental appointments, relocation, and the overall well-being of the child.

The father then filed a timely postjudgment motion pursuant to Rule 59(e), Ala. R. Civ. P., asking the trial court to alter, amend, or vacate the judgment. On July 8, 2021, the parties agreed to extend the time for ruling on the postjudgment motion. See Rule 59.1, Ala. R. Civ. P. A hearing on the postjudgment motion was initially scheduled for August 20, 2021; however, the mother requested a continuance due to her attorney having a scheduling conflict. The trial court granted the continuance and set the hearing for September 8, 2021. On September 6, 2021, the mother filed her response to the father's postjudgment motion. The following day, the father filed a motion to strike the mother's response to his postjudgment motion.

After a hearing on the father's postjudgment motion, the trial court entered an amended final judgment which stated, in pertinent part:

"A. Paragraph No. 1 of the Final Order of Modification dated April 6, 2021, is hereby <u>vacated and rescinded</u>, and the following shall constitute Paragraph No. 1:

"1. The parties shall exercise joint legal and joint physical custody of their minor child, [O.L.S.] whose date of birth is November 17, 2015. The father shall exercise periods of physical custody and/or visitation with the minor child pursuant to Paragraph No. 3 herein below.

"B. Paragraph No. 2 of the Final Order of Modification is hereby <u>vacated and rescinded</u>, and the following shall constitute Paragraph No. 2:

"2. To comply with the implementation provisions of § 30-3-153, Code of Alabama (1975) and consistent with the holding in <u>Ford v. Ford</u>, 3 So. 3d 872 (Ala. Civ. App. 2008), in the event the mother and the father are unable to agree on any aspect of the academic, religious, civic, cultural, athletic or medical and dental activities or needs of their minor child, the following parent is designated as having the primary authority and responsibility regarding involvement in said activity:

"Medical/Dental        Mother
"Religious             Mother
"Civic                 Mother
"Cultural              Father
"Extracurricular/Athletic   Father
"Academic              Mother

"The designation of a parent to possess primary authority and responsibility regarding the involvement of the minor child in certain activities is not intended by this Court to negate

14

the responsibility of the parties to notify and communicate with each other in the exercise of joint legal custody of their minor child.

"Paragraph No. 8 of the [Settlement Agreement] entered into by the parties and ratified and adopted by the Final Decree of Divorce dated March 23, 2018,…is hereby <u>vacated and rescinded</u>. Further, the mother's residence shall be utilized to determine the child's school district.

"….

"D. Regarding child support (Paragraph No. 5 of the Final Order of Modification dated April 6, 2021), the Court informed the parties and counsel during oral arguments that the child support forms required by Rule 32 of the Alabama Rules of Judicial Administration, which were prepared by this Court on April 2, 2021, had inadvertently been secured with the exhibits. Copies of the forms required by Rule 32 have now been made a part of the record in this cause.

"The Court further explained that child support had been calculated several ways before the Final Order of Modification dated April 6, 2021, was issued:

"i. Using the information provided by the mother on her CS-41 with minimum wage as the mother's income and work-related child-care costs at $820.00 per month (per the Child Support Guideline the mother's obligation would be $262.91 and the father's obligation would be $1,590.09);

"ii. Using the mother's income at minimum wage as provided on her CS-41 and adjusting the work-related child-care costs downward to $5576.00 per month utilizing the Alabama Department of

15

Human Resources Child Care Subsidy Program Provider Rate Chart (per the Child Support Guidelines the father's obligation would be $1,378.84);

"iii. Using the information provided by the mother regarding her income at $23.00 per hour and work-related child-care costs at $820.00 per month (per the Child Support Guidelines the father's obligation would be $1,317.94);

"iv. Using the information provided by the mother regarding her income at $23.00 per hour and adjusting the work-related child-care costs downward to $576.00 per month utilizing the Alabama Department of Human Resources Child Care Subsidy Program Provider Rate Chart (per the Child Support Guidelines the father's obligation would be $1,154.37); and,

"v. Using the information provided by the mother regarding her income at $23.00 per hour and omitting the work-related child-care costs (per the Child Support Guidelines the father's obligation would be $768.24).

"Taking all of the facts and evidence in this case into consideration, including the income and expenses of the parties, along with the various calculations with four (4) of the five (5) placing the father's child support obligation above that which was ordered, this Court finds that a deviation in the father's favor was merited. As such, the father's child support obligation shall remain at $985.00 per month consistent with Paragraph No. 5 of the Final Order of Modification dated April 6, 2021.

"E. Paragraphs No. 6 and Paragraph No. 7 of the Final Order of Modification dated April 6, 2021, and only the first

16

(1st) paragraph of Paragraph No. 10 of the [Settlement Agreement] entered into by the parties and ratified and adopted by the Final Decree of Divorce dated March 23, 2018,…are hereby <u>vacated and rescinded</u>.

"F. This Court shall now address Paragraphs No. 8 through 12 of the Final Order of Modification dated April 6, 2021, regarding the findings of Contempt of Court. After over twenty-five (25) years on the bench and with the knowledge that some specificity is required regarding these claims, the Court is concerned that at some point the parties' minor child may review this Order and that specific statements from a parent would serve no purpose other than to condemn, confuse or embarrass. As such, suffice it to say that some of the father's communications were more than inappropriate, some of the exhibits contain profane content, and the late night telephone calls were unwanted. Therefore, in order to clarify the basis for this Court's decision, exhibits utilized to form the basis of this Court's opinions that were made part of the record in this cause shall be referenced by number.

"Paragraph No. 8: The evidence presented proves that the father willfully and intentionally changed the pick-up location from his home to his place of business (Polaris) on April 10, 2019. On the night before the exchange was to occur the following morning, the mother informed the father she had plans (a date). The mother did not hear from the father again until 6:23 a.m. by text message at which time he informed her if she could not be at his house between 7:00 and 7:30 a.m., she would have to pick the child up at Polaris at 8:00 a.m. The father then went on to inquire about her night. In isolation the father's conduct perhaps appears innocent, but when viewed in the context of the distance between the parties' homes and the time frames referenced along with the father's overall conduct regarding the mother's personal life, this act was indeed a willful and intentional violation of Paragraph No. 9(b) of the

[Settlement Agreement] entered into by the parties and ratified and adopted by the Final Decree of Divorce dated March 23, 2018....

"Paragraph No. 9: While the father's duty pursuant to Paragraph No. 12 of the [Settlement Agreement] entered into by the parties and ratified and adopted by the Final Decree of Divorce dated March 23, 2018, to provide the mother with a copy of the policy...the mother did state during her testimony, 'I don't believe it was intentional...' As such, Paragraph No. 9 of the Final Order of Modification dated April 6, 2021, is hereby <u>vacated and rescinded</u>.

"Paragraph No. 10: The parties acknowledge that their divorce was final on March 23, 2018, and that from September to November 2018 they engaged in a sexual relationship. According to the testimony presented, once the relationship ended in November, the father began harassing the mother with late night telephone calls and harassing, threatening, profane and unrequested inappropriate text and email communications. Said conduct continued for a period of time until the father received a second letter on July 11, 2019 from the mother's attorney to cease violating Paragraph No. 30 of the [Settlement Agreement] entered into by the parties and ratified and adopted by the Final Decree of Divorce dated March 23, 2018, which orders and directs the parties to a) refrain from any and all words, conduct, deeds, or activity which are intended or calculated to interfere with, abuse, embarrass or intimidate the other; b) to respect the privacy of the other from and after the date hereof; and c) refrain from any activity, words, or deeds intended or calculated to interfere with the employment of the other, or calculated or intended to interfere with the family or social life of the other. After review of the exhibits and testimony, the Court finds that the father willfully and intentionally violated the terms and provisions set forth in Paragraph No. 30 of said [Settlement Agreement]. (See Plaintiff's Exhibit No. 11, Mother 'Can you just leave me

alone with that kind of thing? ...'; Plaintiff's Exhibit No. 12; Plaintiff's Exhibit No. 15, Page 2; and Plaintiff's Exhibit No. 16.)

"Paragraph No. 11: Between March 20, 2020 and April 8, 2020, the mother's communication with the minor child was willfully and intentionally 'cut off' by the father. The mother was not allowed to see the child or talk to him, even though she requested such opportunities. After review of the exhibits and testimony, the Court finds that the father willfully and intentionally violated Paragraph No. 2 of the Standard Parenting Clauses attached as Exhibit 'A' to the [Settlement Agreement] entered into by the parties and ratified and adopted by the Final Decree of Divorce dated March 23, 2018, which states, 'Both parties shall have reasonable telephone access to the minor children while they are in the physical control of the other parent. The minor children shall have reasonable telephone access to both parties at reasonable times.' After review of the exhibits and testimony, the Court finds that the father willfully and intentionally violated the provisions of Paragraph No. 2 of said Standard Parenting Clauses. (See Plaintiff's Exhibit No. 5 and Plaintiff's Exhibit No. 6, along with the testimony related to this issue.)

"Paragraph No. 12: To complete her CRNA requirements, the mother went to Texas (TCU) for the fall 2019 semester. She asked the father for permission to take the child to Texas, and as is his right, the father said no. The mother then offered the father her custodial time with the minor child from August to December of that year, but the father stated that he wasn't going to do favors for an ex-wife. (See Pages 60-298 of the transcript.) As such, the mother's sister exercised the mother's periods of custody with the child while the mother was in Texas. Pursuant to Paragraph No. 17 of the Standard Parenting Clauses attached as Exhibit 'A' to the [Settlement Agreement] entered into by the parties and ratified and adopted by the Final Decree of Divorce

dated March 23, 2018, 'both parents shall have the opportunity to attend a child's medical and/or dental appointments ...' and 'a parent scheduling any such appointment...should give the same notice to the other parent as soon as received.' Although the mother had never missed a medical appointment for the child, and it was the mother's request for the father to schedule an appointment for the child's four (4) year wellness check-up, there is nothing in the record to show that the father willfully and intentionally violated the provisions of the afore-referenced Paragraph No. 17. As such, Paragraph No. 12 of the Final Order of Modification dated April 6, 2021, is hereby <u>vacated and rescinded</u>.

"G. All other claims for relief not specifically addressed herein are hereby <u>denied</u>.

"H. Any and all provisions of the Final Order of Modification dated April 6, 2021, not specifically modified herein shall remain in full force and effect."

Both parties timely filed a notice of appeal from the trial court's amended final judgment entered on October 14, 2021.

<u>Facts</u>

The testimony and documentary evidence from the trial conducted on January 25, 2021, and the postjudgment-motion hearing conducted on September 8, 2021, revealed the following pertinent facts. Following the parties' divorce, the parties worked out a custody arrangement in which the parties would alternate custody of the child on a weekly basis. The parties had agreed that the mother would exercise final

20

decision-making authority over all medical, religious, and civic-related decisions regarding the child, and the father would have final decision-making authority over all educational and extracurricular activity decisions regarding the child. Concerning the financial support of the child, there was no child-support obligation for either party, but the father was required to pay all expenses related to extracurricular activities and uncovered medical/dental expenses up to $3,000 each year for the child.

After the parties divorced, the mother continued to reside with the father. Approximately two months after the divorce, the father began sending the mother sexually-explicit text messages, and, on at least one occasion, the parties had traveled together and had stayed in the same hotel room. Both parties agree that they began a sexual relationship in September 2018. The mother testified that the sexual relationship between the parties had ended in November 2018, while the father testified that the sexual relationship had continued until February 2019. The mother asserted that the father had continued to send her sexually-explicit text messages even though their sexual relationship had ended and that she did not welcome that type of communication.

The father declared that he had sent sexually-explicit text messages to the mother only between May 2018, and February 2019, which, he says, was during the time he had had a sexual relationship with the mother.

The father stated that the mother sent him a sexually-explicit text messages, i.e., a picture of the mother in a yoga pose. He further stated that the mother waited months before letting him know that she was uncomfortable with his text messages. As soon the mother asked him to stop sending her sexually-explicit text messages, the father asserted that he had stopped. The mother, however, testified that the father did not cease sending her sexually-explicit text messages until after her attorney sent him a letter asking him to cease sending those types of messages to the mother.

The mother testified that she was afraid to upset the father in any way because he would retaliate against her or change the custody arrangement that they had been exercising. For instance, the mother testified that in March 2019, during one of the weeks that the father had had custody of the child, the father denied the mother telephone access to the child. Thus, the mother was unable to communicate with the child for the entire week that the child was in the custody of the

22

father. Another example of the father retaliating against the mother, according to the mother, occurred on April 10, 2019. On April 9, 2019, the mother had informed the father that she would be unavailable that night because of a romantic engagement. The mother did not hear from the father until the following morning at 6:23 a.m., when the father sent her a text message informing her that if she could not pick up the child that day between 7:00 and 7:30 a.m., she would have to pick up the child at his place of employment at 8:00 a.m. After the last-minute change, the father went on to inquire about her night.

From August 2019 to December 2019, the mother temporarily relocated to Texas to complete a nursing extension program in order to become a nurse anesthetist. The mother asked the father whether he would be willing to take sole physical custody of the child during the time that she had to be in Texas. The father refused. Thus, the mother's sister took the place of the mother, resulting in the father and the mother's sister alternating custody of the child on a weekly basis. In December 2019, the mother returned to Alabama and continued her training at a hospital in Huntsville. At the time of trial, the mother was not employed and would be depending on funds from student loans until

December 2021, which was when she would graduate and be able to gain employment.

While the mother was in Texas, she met and began dating a man, J.P. When the mother returned to Alabama, J.P. would visit the mother, and he would either stay overnight with the mother's sister or he would stay overnight in his car when the child was in the mother's custody. In March 2020, the father withheld the child from the mother because he suspected that J.P. had physically hurt the child. On that occasion, the father did not allow the child to return to the custody of the mother, and he did not allow the mother to communicate with the child by any means, including telephone calls.

At the time of trial, the mother was in a serious relationship with a physician from Huntsville. The mother testified that she had been contemplating moving to Huntsville and expressed her desire to enroll the child in a private school in Huntsville. At the time of trial, the father lived in Madison County and worked for Polaris Industries with a monthly salary of $8,108 per month. Although the father stated that he preferred to enroll the child in a public school in Madison County, he

admitted that it would not be impossible for him to accommodate his schedule and route to take the child to school in Huntsville.

## Standard

"When a trial court receives ore tenus evidence, its judgment based on that evidence is entitled to a presumption of correctness on appeal and will not be reversed absent a showing that the trial court exceeded its discretion or that the judgment is so unsupported by the evidence as to be plainly and palpably wrong. Scholl v. Parsons, 655 So. 2d 1060 (Ala. Civ. App. 1995). 'Th[is] presumption of correctness is based in part on the trial court's unique ability to observe the parties and the witnesses and to evaluate their credibility and demeanor.' Littleton v. Littleton, 741 So. 2d 1083, 1085 (Ala. Civ. App. 1999). The trial court's ability to observe witnesses is particularly important in child-custody cases. Ex parte Fann, 810 So. 2d 631, 633 (Ala. 2001)(quoting Williams v. Williams, 402 So. 2d 1029, 1032 (Ala. Civ. App. 1981))('"In child custody cases especially, the perception of an attentive trial judge is of great importance."'). This court is not permitted to reweigh evidence on appeal and substitute its judgment for that of the trial court. Somers v. McCoy, 777 So. 2d 141 (Ala. Civ. App. 2000)."

Mullis v. Mullis, 994 So. 2d 934, 936-37 (Ala. Civ. App. 2007). However, the ore tenus standard of review does not apply to a trial court's conclusions as to legal issues. R.K. v. R.J., 843 So. 2d 774, 776 (Ala. Civ. App. 2002). Issues of law are reviewed de novo. Barber v. Moore, 897 So. 2d 1150, 1153 (Ala. Civ. App. 2004).

## Analysis

On appeal, the father makes three arguments: (1) that the trial court erred in calculating his child-support obligation; (2) that the trial court erred in ordering him to pay 70% of the child's extracurricular-activity expenses and school-related expenses in addition to paying the full amount of his child-support obligation; and (3) that the trial court erroneously held him in contempt of court for three counts. On cross-appeal, the mother argues that the trial court erred in the amended final judgment by changing her award of sole physical custody from the final judgment to an award of joint physical custody.

## I. Child-Support Award

The father argues that the trial court incorrectly calculated his child-support obligation before it decided to deviate from the amount calculated using the schedule of basic child-support obligations. Specifically, the father asserts that the trial court erroneously included monthly child-care costs that were incurred by the mother while she was completing a nursing extension program in determining his child-support obligation. We agree.

The calculation of a parent's child-support obligation is governed by the application of Rule 32, Ala. R. Jud. Admin. In <u>Edwards v.</u>

Edwards, [Ms. CL-2022-0584, Dec. 2, 2022] __ So. 3d __, __ (Ala. Civ. App. 2022), this court has explained:

> "Rule 32(C)(1), Ala. R. Jud. Admin., requires a trial court to first determine the basic child-support obligation owed for the benefit of the children by ascertaining the combined monthly adjusted gross income of the parents and applying the schedule of basic child-support obligations contained in the appendix to the rule. Rule 32(C)(2), Ala. R. Jud. Admin., then requires the trial court to add in work-related child-care costs and health-insurance costs to ascertain the total child-support obligation, which is then multiplied by the percentage of each parent's share of the combined adjusted gross income to determine the obligor's parent's child-support obligation. If the obligor parent is responsible for paying the health-insurance costs for the children, then that amount is subtracted from that parent's child-support obligation to determine the obligor parent's monthly child-support obligation. Rule 32(C)(3), Ala. R. Jud. Admin., requires the court to round up the resulting figure to the nearest whole dollar amount."

"The trial court may, within its discretion, deviate from the Child Support Guidelines; however, if it does so, it must enter a written finding, supported by the evidence, that the application of the guidelines would be unjust or inequitable." Robinson v. Robinson, 795 So. 2d 729, 734 (Ala. Civ. App. 2001).

The amended final judgment states, in pertinent part, that the parties would share joint legal and joint physical custody of the child;

that the father's child-support obligation was $985 per month; and that the father was held in contempt of court on three counts.

"Although the trial court expressed that it was deviating from the [Rule 32, Ala. R. Jud. Admin.,] child-support guidelines, the trial court has a mandatory duty to first correctly determine the basic monthly child-support obligation of [the father] in order to ascertain the extent of its deviation." Sutchaleo v. Sutchaleo, 228 So. 3d 475, 479 (Ala. Civ. App. 2017).

The father cites C.C. v. E.W., 207 So. 3d 67 (Ala. Civ. App. 2016), for the proposition that child-care expenses related to educational pursuits are not included in the definition of child-care costs set forth in Rule 32(B)(8). In C.C. v. E.W., this court analyzed the statutes of neighboring jurisdictions and stated:

> "Rule 32 does not expressly refer to child-care expenses for education-related pursuits, and it does clearly define 'child-care costs.' Rule 32(B)(8), in pertinent part, defines 'child-care costs' as costs 'incurred on behalf of the children because of employment or job search of either parent.' (Emphasis added.) Certainly the pursuit of a college education can be related to employment or a job search; however, to support an interpretation in favor of the mother, we would have to conclude that education-related child-care costs are incurred 'because of' employment or a job search and we would be forced to turn a blind eye to the obvious lack of inclusion in the definition of 'child-care costs' of

28

education-related child-care costs, which are included in the definitions of 'child-care costs' or 'childcare expenses' in the statutes of our neighboring jurisdictions."

207 So. 3d 67, 71 (Ala. Civ. App. 2016). In C.C. v. E.W., this court reversed the portion of the trial court's judgment awarding the mother a prorated amount of work-related child-care expenses, instructed the juvenile court to include in its calculation only the costs of work-related child care, and stated:

> "Nothing in this opinion is intended to imply that the juvenile court could not then deviate from the child-support guidelines upon its inclusion of a 'written finding on the record indicating that the application of the guidelines would be unjust or inappropriate,' Rule 32(A), [Ala. R. Jud. Admin.,] based upon 'facts or circumstances that the court finds contribute to the best interest of the child or children for whom child support is being determined.' Rule 32(A)(1)(g)[, Ala. R. Jud. Admin]."

207 So. 3d at 71. After C.C. v. E.W., was issued in 2016, Rule 32 was amended in 2019 to allow for a deviation from the guidelines when a parent incurs child-care costs that are associated with a parent's training or education necessary to obtain a job. Rule 32(A)(1), Ala. R. Jud. Admin., provides, in pertinent part:

> "(1) Reasons for deviating from the guidelines. Reasons for deviating from the guidelines may include, but are not limited to, the following:

"….

"(g) <u>A parent incurs child-care costs associated with the parent's training or education necessary to obtain a job or to enhance that parent's earning potential, not to exceed a reasonable time as determined by the court.</u> To justify deviating from the guidelines on this basis, the parent must prove by a preponderance of the evidence that the job training or education will benefit the child or children being supported, and child-care costs associated with such training or education shall not exceed the amount required to provide care from a licensed source for the child or children, based on a schedule of guidelines developed by the Alabama Department of Human Resources."

(Emphasis added.)

In this case, the trial court computed the father's basic child-support obligation in five different ways. Four out of the five calculations included child-care costs incurred by the mother while she was a full-time student. The fifth calculation, which did not include any child-care costs, indicated the father's child-support obligation to be $768. In its amended final judgment, the trial court ordered the father to pay the mother $985 per month in child support and explained:

"Taking all of the facts and evidence in this case into consideration, including the income and expenses of the parties, along with various calculations with four (4) of the five (5) placing the father's child-support above that which

30

was ordered, this Court finds that a deviation in the father's favor was merited."

Although the trial court may, in its discretion deviate from the guidelines when a parent incurs child-care costs associated with training or education, the trial court must first determine the basic child-support obligation, which does not include child-care costs associated with a parent's training or education. After calculating the basic child support obligation, the trial court may, it is discretion, decide to deviate from the guidelines for reasons such as child-care costs incurred and associated with a parent's training or education. Rule 32(A)(1)(g), Ala. R. Jud. Admin. In four of its five calculations of the basic child-support calculation, the trial court erroneously awarded the mother work-related child-care expenses, not school-related expenses. At the time of the child-support calculations, the mother was not employed; she was a full-time student. Accordingly, we must reverse the final judgment to the extent that it improperly calculated the father's basic child-support obligation, and we remand the cause for the trial court to determine the father's child-support obligation after properly applying the formula to calculate his basic child-support obligation under Rule 32(C)(1).

Because the father contends that the custody arrangement between the parties should be considered in determining his child-support obligation for the first time on appeal, we cannot consider this argument. See Andrews v. Merritt Oil Co., 612 So. 2d 409, 410 (Ala. 1992) ("[An appellate court] cannot consider arguments raised for the first time on appeal; rather, [an appellate court's] review is restricted to the evidence and arguments considered by the trial court.").

## II.    Extracurricular-Activity Expenses and School-Related Expenses

The father next argues that the trial court's judgment requiring him to pay 70% of the child's extracurricular-activity expenses and school-related expenses, in addition to paying the full amount of his child-support obligation, should be reversed because the trial court failed to state its reasons for making additional awards and the additional awards were not supported by the evidence.

Rule 32(A), Ala. R. Jud. Admin., provides that

"[t]here shall be a rebuttable presumption, in any judicial or administrative proceeding for the establishment or modification of child support, that the amount of the order that would result from that the application of these guidelines is the correct amount of child support to be ordered. A written finding on the record indicating that the

application of the guidelines would be unjust or inappropriate shall be sufficient to rebut the presumption if the finding is based upon:

"(i) A fair, written agreement between the parties establishing a different amount and stating the reasons therefor; or

"(ii) A determination by the court, based upon evidence presented in court and stating the reasons therefor, that application of the guidelines would be manifestly unjust or inequitable."

"[A]lthough the amount of child support established by the guidelines creates a presumption as to the correct amount of child support to be awarded, that presumption is rebuttable, and, under certain circumstances, a trial court has the discretion to award child support outside the guidelines." A.B. v. J.B., 40 So. 3d 723, 733 (Ala. Civ. App. 2009). Furthermore, Rule 32(C)(4), Ala. R. Jud. Admin., provides:

"In addition to the recommended child-support order, the court may order additional amounts for extraordinary medical, dental, and education expenses if (i) the parties have in writing agreed to these amounts or (ii) the court, upon reviewing the evidence, determines that these amounts are in the best interest of the children and states its reasons for ordering these additional amounts."

In A.B. v. J.B., 40 So. 3d 723 (Ala. Civ. App. 2009), this court reversed the portion of the trial court's judgment requiring a mother to

pay one-half of extracurricular-activity expenses in addition to the full amount of child support recommended by the child-support guidelines. This court determined in A.B. that the record, in that case, revealed that no evidence was presented to rebut the presumption created by the guidelines and that the trial court's final judgment failed to indicate that application of the guidelines would be manifestly unjust or inequitable.

Here, it is undisputed that the father encouraged the child's participation in extracurricular activities, such as participating in swimming lessons and sports activities. However, there was no evidence presented at trial about school-related expenses because the child was not in school at the time of trial and because the mother testified at trial that if the child were to attend a private school in the future that she would be paying for the child's tuition. Additionally, although the parties' Settlement Agreement, which was incorporated into the divorce judgment, stated that the parties agreed that the father would be responsible for the payment of all expenses related to extracurricular activities and uncovered medical/dental services for the child each year, up to the sum of $3,000 each year, the parties had not agreed for the

father to be responsible for 70% of the extracurricular-activity expenses and school-related expenses. Because the trial court failed to state its reasons in its final judgment or in its amended final judgment for making these additional awards and the parties did not have any subsequent agreement requiring the father to pay that amount, we must reverse the portion of the trial court's judgment that requires the father to pay 70% of the child's extracurricular-activity expenses and school-related expenses. See A.B. v. J.B., 40 So. 3d 723, 733 (Ala. Civ. App. 2009) (reversing a judgment insofar as it required a parent to pay half of the child's expenses for extracurricular activities because, among other reasons, "[t]he final judgment … failed to include the language necessary to support an award under Rule 32(C)(4)[, Ala. R. Jud. Admin.]").

## III.   Contempt of Court

On appeal, the father argues that the trial court erred in holding him in criminal contempt for the following three counts: (1) unilaterally changing the pick-up location of the child; (2) sending harassing communications to the mother on several occasions; (3) and failing to

35

provide the mother with reasonable telephone access to the child during March 2019.

> "The issue whether to hold a party in contempt is solely within the discretion of the trial court, and a trial court's contempt determination will not be reversed on appeal absent a showing that the trial court acted outside its discretion or that its judgment is not supported by the evidence. Brown v. Brown, 960 So. 2d 712, 716 (Ala. Civ. App. 2006)."

Poh v. Poh, 64 So. 3d 49, 61 (Ala. Civ. App. 2010).

In this case, the trial court held the father in contempt for violating three provisions of the Settlement Agreement that had been incorporated into the parties' divorce judgment. The trial court did not specify in its final judgment dated April 6, 2021, or in its amended final judgment, dated October 14, 2021, the type of contempt in which it found the father. Thus, before we address whether sufficient evidence supported holding the father in criminal contempt, we must first address whether the trial court held the father in criminal or civil contempt.

Rule 70A, Ala. R. Civ. P., governs contempt proceedings. Rule 70A(a)(2)(C), Ala. R. Civ. P., specifies that "criminal contempt" is either:

> "(i) Misconduct of any person that obstructs the administration of justice and that is committed either in the

court's presence or so near thereto as to interrupt, disturb, or hinder its proceedings, or

"(ii) Willful disobedience or resistance of any person to a court's lawful writ, subpoena, process, order, rule, or command, where the dominant purpose of the finding of contempt is to punish the contemnor."

That rule further explains that "civil contempt" is a "willful, continuing failure or refusal of any person to comply with a court's lawful writ, subpoena, process, order, rule, or command that by its nature is still capable of being complied with." Rule 70A(a)(2)(D), Ala. R. Civ. P. "A finding of civil contempt seeks to compel compliance with a court's order; a criminal-contempt determination is designed to punish a contemnor for disobedience of a court's order." S.T.W. v. T.N., 141 So. 3d 1083, 1086 (Ala. Civ. App. 2013). To hold a party in contempt under either Rule 70A(a)(2)(C) (criminal contempt) or 70A(a)(2)(D) (civil contempt), the trial court must find that the party willfully failed or refused to comply with a court order. T.L.D. v. C.G., 849 So. 2d 200, 205 (Ala. Civ. App. 2002).

"'The question of whether [an action involves] civil contempt or criminal contempt becomes important … because a contemnor must be in a position to purge himself from the contempt. Mims v. Mims, 472 So. 2d 1063 (Ala. Civ. App. 1985). In order to purge himself in a criminal contempt case, the contemnor must pay the fine imposed, serve the

37

authorized time, or do both. <u>Kalupa v. Kalupa</u>, 527 So. 2d 1313 (Ala. Civ. App. 1988). In order to purge himself in a civil contempt case, the contemnor must comply with the court's order. Rule 33.4(b), A[la]. R. Crim. P.'"

<u>Davenport v Hood</u>, 814 So. 2d 268, 272-73 (Ala. Civ. App. 2000) (quoting <u>Hill v. Hill</u>, 637 So. 2d 1368, 1370 (Ala. Civ. App. 1994)).

Here, the trial court did not order the father to be incarcerated or to be put on unsupervised probation until he complied with its orders. In other words, the trial court was not seeking to obtain the father's compliance with its orders. Rather, the trial court stated in its judgment for each of the three counts of contempt that "<u>as punishment</u> the father is sentenced to five (5) days in the Huntsville-Madison County Metro Jail. Said sentence is hereby suspended, and the father is placed on unsupervised probation for a period of two (2) years." (Emphasis added.) Thus, the contempt finding in the trial court's judgment found the father to be in criminal contempt. <u>See</u> <u>S.T.W.</u>, supra.

We now address the father's argument that the record does not substantiate the trial court's holding him in criminal contempt for unilaterally changing the pick-up location of the child, sending harassing communications to the mother on several occasions, and

38

failing to provide the mother with reasonable telephone access to the child during March 2019.

The father first argues that the trial court's determination that the father unilaterally changed the pick-up location of the child is based on a provision incorporated into the parties' divorce judgment that is not "an order of reasonable specificity." The father specifically argues that the provision places no limitations on the pick-up location and that the father "could have traveled with the child to China and the mother would have been required to retrieve the child from there[.]" We note that the father failed to raise this issue before the trial court. Thus, we cannot consider this argument. See Andrews v. Merritt Oil Co., supra.

The father also argues that the trial court's holding him in contempt for unilaterally changing the pick up location of the child is not supported by the evidence. Because the father failed to cite any authority for this argument, we affirm the trial court's judgment as to this issue. See Rule 28(a)(10), Ala. R. App. P.; Sea Calm Shipping Co., S.A. v. Cooks, 565 So. 2d 212, 216 (Ala. 1990) ("Where an appellant fails to cite any authority for an argument, [an appellate court] may affirm the judgment as to those issues, for it is neither [an appellate court's]

duty nor its function to perform all the legal research for an appellant.").

The father next argues that the trial court erred in holding him in contempt for sending harassing communications to the mother on several occasions. Before addressing the merits of that issue, we must address the mother's contention that the father failed to preserve the issue for appellate review.

In his brief, the father argues that the parties' divorce judgment did not contain a provision on harassment. Rather, he says, paragraph 30 of the Settlement Agreement prohibited him from conduct that would embarrass or intimidate the mother and there was insufficient evidence to support the trial court's holding him in contempt on that count. In her brief, the mother contends that the father's "nitpicking over the specific verbiage" of paragraph 30 has been brought for the first time on appeal. Because the father's argument that paragraph 30 of the Settlement Agreement does not contain the term "harassment" is raised for the first time on appeal, we cannot consider that argument See Andrews v. Merritt Oil Co., supra.

40

In addressing the father's sufficiency-of-the-evidence argument, which was preserved for appellate review, we note that:

> "[T]he standard of review in an appeal from an adjudication of criminal contempt occurring in a civil case is whether the offense, i.e., the contempt, was proved beyond a reasonable doubt. Hicks v. Feiock, 485 U.S. 624, 108 S. Ct. 1423, 99 L. Ed. 2d 721 (1988); Combs v. Ryan's Coal Co., 785 F.2d 970 (11th Cir. 1986); and United States v. Turner, 812 F.2d 1552 (11th Cir. 1987) …. In Turner, the Court, in discussing the standard of review in a criminal-contempt case, said:

>> "'The essential elements of the criminal contempt for which punishment has been imposed on [the defendant] are that the court entered a lawful order of reasonable specificity, [the defendant] violated it, and the violation was willful. Guilt may be determined and punishment imposed only if each of these elements has been proved beyond a reasonable doubt.'

> "Turner, 812 F. 2d at 1563. The Turner court also stated, quoting Gordon v. United States, 438 F.2d 858, 868 n.30 (5th Cir. 1971):

>> "'"The test is whether the evidence is sufficient to justify the trial judge, as trier of the facts, in concluding beyond a reasonable doubt that the defendant was guilty, and that such evidence is inconsistent with any reasonable hypothesis of his innocence. Such is the substantial evidence test."'

> "Turner, 812 F.2d at 1563."

Ex parte Ferguson, 819 So. 2d 626, 629 (Ala. 2001).

Paragraph 30 of the Settlement Agreement reads:

"The parties' hereto are ordered and directed as follows:

"(a) That each shall refrain from any and all words, conduct, deeds or activity which are intended or calculated to interfere with, abuse, embarrass or intimidate the other;

"(b) That each will respect the privacy of the other from and after the date hereof; and

"(c) That each will refrain from any activity, words, or deeds intended or calculated to interfere with the employment of the other, or calculated or intended to interfere with the family or social life of the other.

Concerning the harassing communications, the trial court stated in its amended final judgment:

"The parties acknowledge that their divorce was final on March 23, 2018, and that from September to November 2018 they engaged in a sexual relationship. According to the testimony presented, once the relationship ended in November, the father began harassing the mother with late night telephone calls and harassing, threatening, profane and unrequested inappropriate text and email communications. Said conduct continued for a period of time until the father received a second letter on July 11, 2019[,] from the mother's attorney to cease violating Paragraph No. 30 of the Agreement entered into by the parties and ratified and adopted by the Final Decree of Divorce dated March 23, 2018."

After the parties' divorce was finalized, the father began sending the mother text messages that were sexual in nature. Thereafter, the parties engaged in a sexual relationship for approximately two months. After their sexual relationship had ended, the father continued sending the mother text messages that were sexual in nature. The father argues on appeal that it was apparent from the mother's engagement in a sexual relationship with him that the mother did not find his text messages harassing. Otherwise, he says, the mother would have never agreed to engage in a sexual relationship with him after their divorce.

Based on the text messages admitted into evidence, the father was not respecting the mother's privacy, which could support the trial court's finding that the father had harassed the mother. For instance, one of the father's text messages to the mother stated, "Have you had any sexual activity since you've been single? Just curious. No judgement either way." To which the mother replied, "Sex with other people isn't something I'm comfortable discussing. If you're looking for that please go elsewhere." Additionally, on multiple occasions, the father sent the mother a series of crude and inappropriate messages even though the mother had indicated that she no longer wanted to receive those types

of messages. For example, the father sent a text message to the mother that said, "If I ask you something old will you promise to answer … . One more question then no more tonight?" The mother replied, "Leave me alone with that kind of thing." Although the mother never engaged in these types of conversations, the father continuously asked the mother about her sexual life. Based on the foregoing, we determine that there was sufficient evidence to support the trial court's finding of contempt of court for sending harassing communications to the mother on several occasions.

The father lastly argues that the trial court erred in holding him in criminal contempt for failing to provide the mother with reasonable telephone access to the child during March 2019. The father argues that the trial court's contempt determination is not substantiated by the record and that the order requiring the father to provide the mother with reasonable telephone access to the child is not an order of reasonable specificity. We first address whether the provision providing for reasonable telephone access is an order of reasonable specificity.

On appeal, the father contends that paragraph two of the Standard Parenting Clauses ("Paragraph No. 2") is not an order of

44

reasonable specificity; thus, the father says, he cannot be held in contempt of violating this provision. Although the father did not argue this issue at trial, he did assert this argument in his postjudgment motion, after which the trial court entered an amended order. Thus, we will consider this argument. See Aramini v. Aramini, 220 So. 3d 322, 333 (Ala. Civ. App. 2016) ("The trial court has the discretion to consider a new legal argument presented for the first time in a postjudgment motion....").

In Nave v. Nave, 942 So. 2d 372, 379 (Ala. Civ. App. 2005), this court determined that the divorce judgment in that case was reasonably susceptible to two meanings and was, therefore, ambiguous. This court determined that, because the judgment was ambiguous, "the trial court could not have found beyond a reasonable doubt that the father willfully violated a lawful order of reasonable specificity." 942 So. 2d at 379. This court stated in Nave:

> "An agreement, including one merged into a divorce judgment, is ambiguous when it is reasonably susceptible to more than one meaning. Ex parte Littlepage, 796 So. 2d 298 (Ala. 2001).
>
> > "'When a trial court adopts a separation agreement, it is merged into the final judgment of divorce. A judgment of divorce is to be interpreted

or construed like other written instruments. Whether an agreement is ambiguous is a question of law to be determined by the trial court. If the agreement is susceptible to more than one meaning, then an ambiguity exists. If only one reasonable meaning clearly emerges, then the agreement is unambiguous.'

"Wimpee v. Wimpee, 641 So. 2d 287, 288 (Ala. Civ. App. 1994) (citations omitted)."

942 So. 2d at 378.

Here, the provision that provides for reasonable telephone access is Paragraph No. 2 of the Standard Parenting Clauses incorporated into the parties' divorce judgment. Paragraph No. 2 states that "[b]oth parties shall have reasonable telephone access to the minor children while they are in the physical control of the other parent. The minor children shall also have reasonable telephone access to both parties at reasonable times." While the father contends that the term "reasonable" is ambiguous and subject to individual interpretation, Black's Law Dictionary defines "reasonable" in pertinent part as "Fair, proper, or moderate under the circumstances; sensible." Reasonable, Black's Law Dictionary (11th ed. 2019).

Although the father posits that the term "reasonable" is ambiguous, the finding of contempt does not rest on the definition of the

46

term "reasonable." Rather, the court stated in its amended final judgment that "[b]etween March 20, 2020[,] and April 8, 2020, the mother's communication with the minor child was willfully and intentionally 'cut off' by the father. The mother was not allowed to see the child or talk to him, even though she requested such opportunities." In other words, the father denied the mother <u>any</u> telephone access to the child during that time. As the mother argues, reasonable telephone access is certainly not a "total lack of" telephone access.

The father next argues that the trial court's amended order incorrectly references the period between March 20, 2020, and April 8, 2020, as the time when the father allegedly denied the mother telephone access to the child, while the final judgment references March 2019. At trial, the mother testified that the father denied her reasonable telephone access to the child on two occasions; with one occurring in March 2019 and the other occurring in April 2020.

The mother testified that the father would not allow her to talk to the child for an entire week in March 2019 during which time the father had physical custody of the child. Between March 2020 and April 2020, the father kept the child in his physical custody without consent from

47

the mother and did not provide the mother with any telephone access to the child. The father admitted to withholding the child from the mother and explained that he feared that the mother's boyfriend had injured the child. The father also stated that he had allowed the mother to "make-up time" for her missed custodial period. However, the mother's missed custodial period is not at issue here. The trial court held the father in contempt for failing to provide reasonable telephone access to the mother between March 20, 2020, and April 8, 2020. Between that time, the testimony presented indicates that the father did not allow the mother to communicate with the child via telephone.

Accordingly, the trial court did not err in holding the father in contempt for failing to provide the mother with reasonable telephone access to the child.

<u>Unsupervised Probation</u>

The father argues that the trial court erred in placing him on unsupervised probation for two years. Before addressing the merits of that issue, we address the mother's contention that the father failed to preserve the issue for appellate review.

The imposition of a sentence concerns subject-matter jurisdiction. See Ex parte Butler, 972 So. 2d 821, 825 (Ala. 2007) (plurality opinion) ("'[A] trial court does not have [subject-matter] jurisdiction to impose a sentence not provided for by statute.'" (quoting Hollis v. State, 845 So. 2d 5, 6 (Ala. Crim. App. 2002)). Thus, an appellate court is not limited by the parties' arguments as to that issue. See Ex parte Smith, 438 So. 2d 766, 768 (Ala. 1983) ("Lack of subject matter jurisdiction may not be waived by the parties and it is the duty of an appellate court to consider lack of subject matter jurisdiction ex mero motu.")

In addressing the father's argument, we note that sanctions for criminal contempt are limited by statute to a maximum fine of $100 and imprisonment not to exceed five days. See § 12-11-30(5), Ala. Code 1975.

> "[U]nder the Alabama Criminal Code, [criminal] contempt is only an 'offense,' § 13A-1-2(1), [Ala. Code 1975,] not a 'crime,' § 13A-1-2(5)[, Ala. Code 1975]. The maximum sentence the circuit court can impose for criminal contempt is 5 days in jail and a $100 fine. Ala. Code 1975, § 12-11-30(5). An offense that may be punished only for 30 days or fewer days in jail is a 'violation,' § 13A-1-2(2)[, Ala. Code 1975]. Only misdemeanors and felonies (not violations) are crimes. § 13A-1-2(5). Therefore, under our statutes, criminal contempt is a violation, and is merely an offense, not a crime."

Ex parte Ivey, 698 So. 2d 187, 188 (Ala. 1997). "Under Alabama law, the probationary period for a sentence imposed upon a defendant's

49

conviction of a misdemeanor cannot exceed two years, and the probationary period for a sentence imposed upon a defendant's conviction of a felony cannot exceed five years. § 15-22-54(a), Ala. Code 1975." L.S. v. A.S., 272 So. 3d 169, 184 (Ala. Civ. App. 2018).

In L.S., the juvenile court determined that the mother had committed five separate acts of contempt and sentenced her to five days in jail for each act. The juvenile court then stated in its judgment that it would suspend that sentences and place the mother on unsupervised probation for two years for each count. This court held that the juvenile court had exceeded its authority in imposing a two-year unsupervised probationary period for the offense of criminal contempt and stated, "Our holding is not be understood as a prohibition against the suspension of sentences in actions of criminal contempt. We merely conclude that a period of probation cannot be imposed as part of such a sentence." L.S. v. A.S., 272 So. 3d at 184.

In this case, the trial court held the father in criminal contempt and sentenced him to five days in jail, suspended that sentence, and placed him on unsupervised probation for two years. In accordance with L.S., we conclude that the trial court had no authority to impose on the

50

father a probationary period for the offense of criminal contempt. Accordingly, we reverse the trial court's imposition of a two-year probationary period for his contempt.

## IV.   Cross-Appeal

On appeal, the mother argues that the trial court erred by awarding the parties joint physical custody of the child. Before addressing the merits of that issue, we must address the father's contention that the mother failed to preserve the issue for appellate review. In his brief, the father contends that the mother failed to file a postjudgment motion after the trial court entered its amended order awarding the parties joint physical custody of the child.

Although the father posits in his postjudgment motion that the facts supporting the contempt orders were the reasons for the initial custody modification, the final judgment dated April 6, 2021, and the amended final judgment dated October 14, 2021, of the trial court do not correlate the custody modification to the findings of contempt. Both the final judgment and the amended judgment lack any specific findings of fact relating to the custody modification. When the trial court has made no written findings of fact in a nonjury trial, a party must move

for a new trial in order to preserve for review a question relating to the sufficiency or weight of the evidence. <u>New Prop. LLC v. Stewart</u>, 905 So. 2d 797, 801 (Ala. 2004). In other words, the party must file a postjudgment motion in order to preserve an argument relating to the sufficiency of the evidence for appellate review. The mother failed to file a postjudgment motion; she did not move for a new trial in this case or otherwise argue that the judgment was not supported by sufficient evidence. Accordingly, the mother failed to preserve this issue for appellate review, and we affirm the portion of the trial court's judgment awarding the parties joint physical custody of the child.

Conclusion

For the reasons set forth herein, the judgment of the Madison Circuit Court is affirmed as to the trial court's holding the father in contempt for unilaterally changed the pick-up location of the child; as to the trial court's holding the father in contempt for sending harassing communications to the mother; as to the trial court's holding the father in contempt for failing to provide the mother with reasonable telephone access to the child; and as to the trial court's judgment awarding the parties joint physical custody of the child. The judgment is reversed as

to the trial court's imposition of a probationary period and as to the trial court's judgment requiring the father to pay 70% of the child's extracurricular-activity expenses and school-related expenses. The judgment is also reversed as to the amount of the child-support award, and the cause is remanded for the trial court to properly determine father's child-support obligation in accordance with Rule 32, Ala. R. Jud. Admin. The trial court may, in its discretion, compute that obligation according to the child-support guidelines or expressly state the reasons why a deviation from the guidelines is necessary, such as taking into consideration the child-care costs that the mother incurs associated with her education and the custody arrangement between the parties.

2210161 -- AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.

2210206 -- AFFIRMED.

Thompson, P.J., and Moore, Edwards, and Fridy, JJ., concur.